IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.  Case Nos.:  3:08cr101/MCR
                3:10cv120/MCR/EMT

JORGE LUIS ALMANZA

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 120). The Government filed a response (doc. 132), and Defendant filed a "Reply to Government and Motion of Citation of Supplemental Authorities Under Rule 28 of RCAP" (doc. 134). In his reply, Defendant requests that he be allowed to use the 2010 Amendments to the Sentencing Guidelines in support of a further reply, if applicable (*id.*). The court directed the Government to respond, and it did, taking the position that Defendant would not be entitled to a reduction in sentence based on "yet-to-take effect amendments to the guidelines, pursuant to 28 U.S.C. § 2255" (doc. 136 at 3). Defendant then filed "Movant's Traverse to the Government's Response with Humble Request for a Pro Se Liberal Interpretation That Would Lead to Undetrimental Decision" (doc. 137), in which he indicated that his original motion had been prepared by inmate law clerks who were no longer at the institution and asked that it "be liberally interpreted to effect a decision that would be totally undetrimental to him" (*id.* at 1).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue

requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b),

## BACKGROUND

Defendant Jorge Luis Almanza and co-Defendant Eduardo Requejo were charged in a two-count indictment with: (1) conspiracy to possess with intent to distribute cocaine, and (2) possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(ii) (doc. 22).  The charges stemmed from an October 12, 2008 traffic stop of a tractor semi-trailer truck occupied by both Defendants.  Requejo was driving at the time of the stop, but Almanza, who had a Texas Commercial Driver's License ("CDL"), had shared in the driving responsibilities (*see* Presentence Investigation Report ("PSR") at ¶¶ 10–13).  During a routine commercial motor vehicle inspection, law enforcement discovered nearly 150 kilograms of cocaine hidden among twelve pallets of beverages (*id.*, ¶¶ 13–14).  Almanza cooperated and spoke with law enforcement while Requejo invoked his right to remain silent (*id.*, ¶ 15).  Almanza told law enforcement that two days before their arrest, Requejo, a life-long friend, asked for Almanza's assistance in transporting a cargo load from Texas to Florida, and that he accepted (*id.*).  They drove a load of cargo from Miami to Texas, and it was not until during the return trip that he learned that they were transporting cocaine (*id.*, ¶¶ 15–16).  He did not object because he needed the money that Requejo had offered to pay him, and he claimed both that he did not know how much cocaine was in the truck and that he had never transported or distributed illegal drugs previously (*id.*, ¶ 16).

Defendant Almanza was detained pending trial (doc. 37).  The Government filed a motion to sever Defendants, which was granted (docs. 45, 48).  A superseding indictment, which changed only the commencement date of the conspiracy charged in count one from September 1, 2008 to July 1, 2007, was returned on November 18, 2008 (doc. 55).  The court denied Almanza's motions to suppress physical statements and evidence after a hearing (*see* docs. 61, 62, 69, 71), and thereafter, represented by retained counsel Jordan Lewin, he entered a plea of guilty to both counts of the indictment, reserving his right to appeal the denial of the motions to suppress (docs. 72, 85).[1]

---

[1] The court also denied the motions to suppress filed by co-defendant Requejo (*see* docs. 64, 65, 69, 71). Requejo proceeded to trial represented by retained counsel Michael Dennis Walsh, and on April 15, 2009, the jury returned a verdict of not guilty on both counts (*see* docs. 109, 111, 114).

Case Nos.: 3:08cr101/MCR; 3:10cv210/MCR/EMT

The PSR calculated Defendant Almanza's base offense level at 33 after consideration of the mitigating role adjustment (PSR ¶ 26). Defendant received a two-level increase pursuant to § 3B1.3 for using a "special skill" (his Texas CDL) to facilitate the commission or concealment of the offense, and a two-level decrease pursuant to § 3B1.2(b) for his role in the offense (*id.*, ¶¶ 27, 29). After an adjustment for acceptance of responsibility his total offense level was 30 (*id.*, ¶¶ 32–33). He had no prior criminal convictions, and therefore his criminal history category was I (*id.*, ¶¶ 37–39). The applicable guidelines range was 97 to 121 months, but due to the statutorily required minimum sentence of 10 years the range became 120 to 121 months (*id.*, ¶¶ 66–67).

Defendant filed a written objection to the two-level increase under § 3B1.3 for using a "special skill" (doc. 82), and he also filed a "'safety valve' statement" in which he argued for the application of the safety valve, § 5C1.2 of the sentencing guidelines (doc. 115). Finally, he filed a Sentencing Memorandum, accompanied by letters of support from his wife and thirteen-year old daughter (doc. 116). In the Sentencing Memorandum, Defendant analyzed the § 3553(a)(1) sentencing factors and argued for leniency (*id.* at 1–5). He also admitted he was in need of drug counseling because he had begun abusing cocaine and marijuana in recent years as a result of financial troubles (*id.* at 4; *see also* PSR ¶ 54).

At sentencing, the court determined that Defendant qualified for application of the safety valve (doc. 119 at 1). The adjusted total offense level was 28, and the adjusted guidelines range was 78 to 97 months (*id.*). Defendant was sentenced to a term of 84 months imprisonment on each count to run concurrently (docs. 117–118). He did not appeal, and the instant motion to vacate was timely filed on April 8, 2010, pursuant to the prison mailbox rule[2] (doc. 120).

In the present motion, Defendant separates his claims into three grounds for relief (doc. 120 at 4). First, Almanza contends that counsel operated under a conflict of interest as counsel also represented and was paid by co-Defendant Requejo (*id.*). Second, he contests the application of the

---

[2] A pro se inmate's pleading is deemed filed at the time it is placed in the prison mailbox or delivered to prison authorities for mailing. *See* Houston v. Lack, 487 U.S. 266 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"); Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was signed).

two-level increase for his use of his CDL (*id.*). In his last claim he mentions ineffective assistance of counsel, albeit without identifying counsel's specific deficiencies, and indicates his intent to amend his motion (*id.*), which he ultimately did not do. The Government opposes the motion in its entirety.

**LEGAL ANALYSIS**

General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981); Hidalgo v. United States, 138 F. App'x 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); Mills v. United States, 36 F.3d at 1055 (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); United States v. Frady, 456 U.S. 152, 165 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes: (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.,* 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Gaskin v. Secretary, Dept. of Corrections, 494 F.3d 997, 1002 (11th Cir. 2007). "Strickland's two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990) (*citing* Hill v. Lockhart, 474 U.S. 52 (1985)); United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001). In applying Strickland, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688; *see also* Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan, 909 F.2d at 477 (citing Harich v. Dugger, 844 F.2d 1464, 1469 (11th Cir. 1988); Dingle, 480 F.3d 1099; Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315 (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); United States v. Ross, 147 F. App'x 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dept. of Corrections, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the

record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

## Procedural Bar

The Government first asserts that to the extent Defendant's first and second claims are construed as anything other than ineffective assistance of counsel claims, they are procedurally barred due to Defendant's failure to raise them on direct appeal or to have shown cause for failing to raise them and actual prejudice resulting from that failure. *See* Lynn, 365 F.3d at 1234–35; Nyhuis, 211 F.3d at 1343–44. This is correct. However, each of the pro se Defendant's claims will be liberally construed as alleging ineffective assistance of counsel due to his general reference to ineffective assistance of counsel in his third ground for relief.

## Defendant's Claims

Defendant's first claim for relief is that his attorney Jordan Lewin operated under a conflict of interest when Lewin also represented co-Defendant Requejo and was paid by him (doc. 120 at 4). This assertion is, at least in part, factually incorrect. The Government has submitted the affidavit of attorney Lewin, the contents of which have not been disputed by Defendant (doc. 132-1). Mr. Lewin states that he was contacted by the families of both Defendant Almanza and co-Defendant Requejo (*id*. at 2). They met with Lewin and co-counsel Michael Walsh, who ultimately represented Requejo at trial, and discussed possible representation for both men (*id*.). Attorneys Lewin and Walsh explained the need for two separate lawyers to represent each client individually (*id*.). They noted that although there was no present conflict of interest, a potential conflict was clearly foreseeable (*id*.). Requejo's family members indicated that they wanted to pay for the representation of the two men, due to their life long friendship, dating back to their youth in Cuba (*id*.). The Requejo family had a restaurant business and were financially in a better situation than Defendant's wife, who was employed in that restaurant, to pay for the representation (*id*.). Counsel states that he explained to Requejo's family that even if they paid for Defendant's legal representation, they could not have any decision making authority within that representation (*id*.). Counsel made clear that his obligation and interest would be to giving Defendant the best

representation possible, even if that conflicted with Requejo's interest (*id*.). Lewin then flew to Pensacola to meet with Defendant and discuss the situation with him (*id*.). Defendant told counsel that he understood who was paying for his legal representation, he understood the potential adverse positions that he and Requejo might be facing, and that he wanted Lewin to represent him (*id*.). The two men and their attorneys, Lewin and Walsh, entered into a joint defense agreement that allowed them to have group meetings involving all four men (*id*.). However, not all meetings were conducted jointly. Counsel states that he specifically recalls a meeting with Defendant and counsel's investigator/interpreter Nicole Flores during which he asked if Defendant wanted to enter into plea negotiations with the Government and provide information against Requejo in hopes of reduced punishment (*id.*). Defendant did not want to pursue that strategy (*id.*).

Defendant's assertion that a "blatant conflict of interest" existed is unsupported by any suggestion of how the alleged conflict manifested itself in counsel's representation of him. The United States Supreme Court has held that the mere possibility of a conflict of interest is insufficient to impugn a criminal conviction, and that in order to demonstrate a Sixth Amendment violation based on an attorney's alleged conflict of interest, a defendant must establish both an actual, rather than a speculative, conflict of interest and an adverse effect on the lawyer's performance. Cuyler v. Sullivan, 446 U.S. 335, 350 (1980); *see also* Mickens v. Taylor, 535 U.S. 162 (2002); *see also* Owen v. Secretary of Dept. Of Corrections, 568 F.3d 894, 913 (11th Cir. 2009). An actual conflict of interest is a conflict that affects counsel's performance, as opposed to a mere theoretical "division of loyalties." Mickens, 535 U.S. at 171; *see also* Caderno v. United States, 256 F.3d 1213, 1218 (11th Cir. 2001) (a hypothetical or speculative conflict does not violate the constitution) (citations omitted). A defendant must show specific instances in the record that demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Caderno, 256 F.3d at 1218; Porter v. Singletary, 14 F.3d 554, 560 (11th Cir. 1994) (defendant must show "specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party."). In order to prove an adverse effect, defendant might show: (1) a plausible alternative defense strategy that counsel might have pursued; (2) that the alternative strategy was reasonable; and (3) some link between the actual conflict and the decision to forgo that strategy. Brownlee v. Haley, 306 F.3d 1043, 1064 n.17 (11th Cir. 2002). Or, he might "demonstrate that the attorney made

a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." Porter, 14 F.3d at 560–61. Once a Defendant shows that a conflict actually affected the adequacy of the representation, he need not demonstrate prejudice. Cuyler, 446 U.S. at 349–50. Conversely, a defendant who has not shown that counsel "actively represented conflicting interests" has not established the constitutional predicate for an ineffective assistance of counsel claim. Cuyler, 446 U.S. at 350

As noted above, Defendant offers no explanation as to how the alleged conflict affected counsel's performance; he merely cites Wood v. Georgia, 450 U.S. 261 (1981) in support of his claim. In Wood, the three defendants were former employees of an "adult" theater and bookstore who had been convicted of distributing obscene materials and sentenced to periods of probation and substantial fines. 450 U.S. at 262. Their lawyer had been hired by their employer. *Id.* at 272. The case initially came before the Court for determination of an Equal Protection issue: whether it was discriminatory on the basis of wealth to imprison defendants when they were unable to pay their fines. *Id.* at 22. In lieu of reaching that question, the Court concluded that the record revealed a possible due process violation due to the relationship between counsel and the employer and remanded for further findings on that issue. *Id.* It identified several indications of an apparent conflict of interest that were found at various stages of the proceedings below, and noted its suspicion that the employer and defendants' attorney were seeking to create a "test case." *Id.* at 267. The Court noted for instance that the three defendants had been represented since the time of their arrest by a single lawyer, whom none of them ever paid or was expected to pay. *Id.* at 266. Defendants were told that the employer would pay any fines and post any necessary bonds, which it did until the last instance when large fines were imposed, suggesting to the Court that the employer was seeking resolution of a greater issue for its own benefit. *Id*. at 266–67. The record reflected that defendants raised no protest about the size of the fines imposed at sentencing, that not even a single good-faith payment had been made toward the fines during the three months leading up to the probation revocation, and that counsel made no motion to modify the fine requirements until the day before defendants were due to be incarcerated for non-payment. *Id*. at 267–68.

The Wood Court specifically noted the special dangers inherent in a situation in which a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the

third party is the operator of the alleged criminal enterprise. *Id.* at 268–69. Of most likely relevance to the case at bar, the Court identified the risk that the lawyer may attempt to prevent the client from obtaining leniency by preventing the client from testifying or cooperating against the former employer. *Id.* at 269. Attorney Lewin's unrebutted affidavit squarely addresses this issue. Before undertaking his representation of Defendant Almanza, Lewin made known that his ethical duties to Defendant Almanza would be paramount, regardless of whether there was a conflict with Requejo's interests, and he discussed the fee arrangement with Defendant, who ultimately approved it (doc. 132-1 at 2). At one point, counsel also discussed with Defendant Almanza the possibility of cooperating with the Government and providing information against Requejo, but Almanza rejected the idea of pursuing this strategy (*id.*).

In summary, although the potential for conflict in this situation was certainly present, the record reflects that Defendant was made aware of this and willingly agreed to Lewin's representation of him being paid for by Requejo. Additionally, Defendant has not identified a specific act or omission by Lewin demonstrating that an actual conflict of interest adversely affected his performance. Having failed to do so, he has failed to establish his entitlement to relief.

As his second ground for relief, Defendant contests "the enhancement of obstructions of justice and abuse of trust for his CDL driver's license, since he was not properly represented by counsel, nor was he ever able to obtain any copies of his plea hearing or sentence hearing" (doc. 120 at 4). Defendant has not explained how his alleged inability to procure copies of his plea or sentencing transcripts is the fault of counsel.[3] With respect to the remainder of his claim, Defendant clearly refers to the application of the two-level adjustment pursuant to § 3B1.3 due to Defendant's possession of a Texas CDL (PSR ¶ 27), as no other upward adjustment, for obstruction of justice or otherwise, was applied (*see* PSR ¶¶ 22, 30). Because a direct challenge to the application of this adjustment is procedurally barred, the court construes Defendant's claim as alleging that counsel was constitutionally ineffective with regard to this adjustment. The record reflects that counsel did in fact file a detailed written objection to this adjustment, and made additional argument at

---

[3] It appears that only the transcripts of the motion hearing and sentencing are part of the record (*see* docs. 85, 126).

Case Nos.: 3:08cr101/MCR; 3:10cv210/MCR/EMT

sentencing, although the objection was overruled (docs. 82, 126 at 82–87). Defendant does not suggest what additional arguments his lawyer could or should have made that would have altered the district court's ruling with respect to the application of the two-level § 3B1.3 adjustment. In essence then, Defendant has offered only bare, conclusory allegations in support of his claim, which are insufficient to satisfy the Strickland test. *See* Wilson, 962 F.2d at 998; Tejada, 941 F.2d at 1559; Stano v. Dugger, 901 F.2d at 899 (citing Blackledge, 431 U.S. at 74); Ross, 147 F. App'x at 939; Smith, 815 F.2d at 1406–07. He therefore is not entitled to relief.

In his third claim, Defendant asserts that he received ineffective assistance of counsel, and indicates his intent to amend his submission, preserving his claims through this "bare bones" filing (doc. 120 at 4). Defendant never amended his submission, and he has failed to suggest how Mr. Lewin acted in a manner that was constitutionally unreasonable. Defendant cited two Second Circuit cases in conjunction with ground three, neither of which has obvious applicability to his case or would entitle him to relief.[4] Thus to the extent Defendant requests relief in ground three, this claim must also be denied.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

---

[4] Miller v. Angliker, 848 F. 2d 1312 (2d Cir. 1988) was a state habeas action alleging a Brady violation. In United States v. Arteca, 411 F.3d 315 (2d Cir. 2005), the court upheld the district court's decision to refuse to allow the defendant to withdraw his guilty plea after counsel underestimated his sentencing exposure, but remanded for re-sentencing because the district court had applied the guidelines mandatorily in imposing sentence.

Case Nos.: 3:08cr101/MCR; 3:10cv210/MCR/EMT

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (doc. 120) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 16th day of November 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**